IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DVISION

| | |
|---|---|
| MAURICE BROWN, for himself and on behalf of his minor child, AMIR BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO; Chicago Police Officers JOHN NEMEC, star No. 19704, JOSHUA CHAMPION, star No. 13695, MICHAEL SEBASTIAN, star No. 11892, RICARDO LOPEZ, star No. 11987, MATTHEW HECKER, star No. 12229, DANIEL MCNICHOLAS, star No. 12550, ELVIS TURCINOVIC, star No. 13509, BRIAN BARDSLEY JR., star No. 13848, PAUL AMELIO, star No. 14395, ANDREW TURNER, star No. 14932, VICKY PEREZ, star No. 15656, RYAN MCCALLUM, star No. 16333, DANIEL COLBENSON, star No. 16857, PIOTR NESTOROWICZ, star No. 16883, MARCO ZENERE, star No. 17319, MARIA MARQUEZ, star No. 17363, SEAN FARLEY, star No. 17780, KEVIN SHEAHAN, star No. 18667, WILLIAM MURPHY, star No. 19214, PHILLIP RENAULT, star No. 19250, SCOTT MINNECI, star No. 19643, TIMOTHY SCHNOOR, star No. 1970, PATRICK QUINN, star No. 19828, ARMANDO CHAGOYA, star No. 19938, CHARLES RHEIN, star No. 2164, MATTHEW LUCKI, star No. 3055, EMMANUEL ZAMBRANO, star No. 3325, KENNETH ADAIR, star No. 4145, ERIC JAMES, star No. 4308, PETER JONAS, star No. 5069, BRYAN ZYDEK, star No. 5642, ANDREW CUOMO, 5853, MATTHEW LOCKITSKI, star No. 6722, SERGIO | Case No.:<br><br>Complaint for violation of Civil Rights<br><br>JURY DEMANDED |

| | |
|---|---|
| VENCES, star No. 7780, ALBERT DOBBINS, star No. 9225, TAWAGA ROBERTS, star No. 9269, CLINTON SEBASTIAN, star No. 1944, JOHN HROMA JR., star No. 1729, MICHAEL NOWACKI, star No. 2373, THOMAS LAMB JR., star No. 606, and THE CITY OF CHICAGO,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiffs AMIR BROWN and MAURICE BROWN were and are citizens of the United States and were within the jurisdiction of this court.

4. At all times herein mentioned, Plaintiff AMIR BROWN was a 3-year-old in the care of his father, Maurice Brown.

5. At all times herein mentioned, OFFICERS NEMEC, CHAMPION, SEBASTIAN, M., LOPEZ, HECKER, MCNICHOLAS, TURCINOVIC, BARDSLEY JR, AMELIO, TURNER, PEREZ, MCCALLUM, COLBENSON, NESTOROWICZ, ZENERE, MARQUEZ, FARLEY, SHEAHAN, MURPHY, RENAULT, MINNECI, SCHNOOR, QUINN, CHAGOYA, RHEIN, LUCKI, ZAMBRANO, ADAIR, JAMES, JONAS, ZYDEK, CUOMO, LOCKITSKI, VENCES, DOBBINS, ROBERTS, SEBASTIAN, C., HROMA JR, and NOWACKI, LAMB JR, (hereinafter

"Defendant Officers"), were employed by the City of Chicago Police Department and were acting under color of state law and as the employees, agents, or representatives of the City of Chicago Police Department. Defendants are being sued in their individual capacities.

6. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

7. Before 6:00AM, on Friday, March 15, 2019, Maurice Brown and his family were abruptly awoken by nearly 40 Chicago police officers surrounding their home at 8914 S. Laflin St., Chicago, IL, creating noise and light diversions, and calling them out of the house over a bullhorn with weapons drawn to execute a search warrant.

8. Plaintiffs and their family calmly exited the home with their arms raised as SWAT and other officers formed a semi-circle across the front of the property. The Defendant Officers were heavily armed with loaded assault rifles and had their fingers on the triggers. Defendant Officers chose to use this show of force and threat, despite the presence of four children aged nine and younger, including Plaintiff Amir Brown who was two years old at the time.

9. When Plaintiffs reached Defendant Officers, Plaintiff Maurice Brown was handcuffed in front of his young son and remained handcuffed for two hours while standing in the cold rain while the search took place.

10. From the time the family exited the home around 6:00A.M., until about 6:45A.M., Amir Brown was forced to remain in the cold and rain, despite not having shoes or socks on his feet.

11. During this time, Plaintiff Amir Brown was being held by Plaintiff Maurice Brown's girlfriend Sharron. When Sharron informed Defendant Officers that Amir was not wearing shoes, was cold, rain-soaked, and needed his diaper changed, one of Defendant Officers shouted at her, "YOU'RE JUST GOING TO HAVE TO FUCKING DEAL WITH IT!"

12. Only after the search warrant arrived around 6:45A.M. was Plaintiff Maurice Brown's aunt allowed to take custody of Plaintiff Amir Brown and get him dry, clothed, and into a clean diaper. By that time, Plaintiff Amir was crying, still barefoot and had an unchanged diaper.

13. At no time during the execution of the search warrant did Plaintiff Maurice Brown refuse to follow instructions, resist arrest, attempt to flee, or pose any threat whatsoever to any of the officers at any time.

14. During the search of the home, Defendant Officers deployed a loud explosive device inside the home, ripping a hole in the second-floor ceiling and causing toxic dust and debris to coat the residents' clothing and belonging.

15. Following the search, the family members were brought back inside from the cold, but remained detained within the home until Defendant Officers departed at or around 10:00A.M.

16. No guns or other contraband were found during the ensuing search.

17. No arrests or charges were made during or following the search.

18. On March 15, 2019, Defendant Officers needlessly terrorized Plaintiffs Maurice and Amir Brown, his 3-year-old child. The use of excessive force against a young child and his father while executing the search warrant violated the constitutional rights of both Plaintiffs.

19. This manner of executing a search warrant was undertaken pursuant to the City of Chicago's systemic, *de facto* policy of failing to protect young children from the unnecessary use of police force.

20. By reason of the above-described acts and omissions of Defendants Officers, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great mental and emotional pain and suffering all to her damage in an amount to be ascertained.

21. The aforementioned acts of Defendant Officers were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiffs' rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

22. By reason of the above-described acts and omissions of Defendant Officers, Plaintiffs were required to retain an attorney to institute, prosecute, and render legal assistance to them within action so that they might vindicate the loss and impairment of their rights. By reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act or any other provision set by law.

<u>**COUNT I**</u>
**PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANT OFFICERS
FOR FALSE ARREST**

23. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty-two (22) here at as though fully set forth at this place.

24. Plaintiff Maurice Brown was seized without legal cause, and/or seized for longer than was necessary or lawful, and/or detained in unreasonable conditions and/or subjected to excessive use of force through the use of handcuffs that were too tight and/or pointing guns at him without legal cause.

25. Plaintiff Amir Brown was seized without legal cause, and/or seized for longer than was necessary or lawful, and/or detained in unreasonable conditions and/or subjected to excessive use of force by having guns pointed at him without legal cause.

26. By reason of the conduct of Defendant Officers and each of them, Plaintiffs were deprived of rights, privileges, and immunities, secured to them by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder. There was no legal cause to detain and/or use any force upon any Plaintiffs.

27. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiffs' persons was in violation of Plaintiffs' Constitutional Rights and not authorized by law. The individual Defendants and each of them violated the Plaintiffs' rights in the following manner: the use of force, the seizure and detention and/or arrest of Plaintiffs by Defendants and each of them, was without any legal cause.

28. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth Amendment rights. Therefore, Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

**COUNT II**
**PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANT OFFICERS FOR UNREASONABLE MANNER OF ENTRY AND SEARCH OF PLAINTIFFS' HOME**

29. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty-two (22) here at as though fully set forth in this place.

30. By reason of the conduct of Defendants and each of them, Plaintiffs were deprived of rights, privileges, and immunities secured to them by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

31. Defendants searched Plaintiffs without probable cause in violation of their Fourth Amendment rights.

32. The manner in which Defendants conducted their entry into and search of the home were objectively unreasonable. For example, Defendants pointed guns at Plaintiffs at close range, handcuffed Plaintiff Maurice Brown for nearly two hours, cursed at Plaintiffs, detained Plaintiff Maurice Brown in the freezing rain for nearly two hours and in the home for another two hours, and damaged or destroyed Plaintiffs' personal property.

33. The conduct of Defendants was undertaken intentionally, with malice and reckless indifference to Plaintiffs' constitutional rights.

34. Defendants' conduct toward Plaintiffs constituted excessive force.

35. Under the circumstances, Defendants' use of force against Plaintiffs, specifically Amir Brown, was unnecessary, unreasonable, and unjustifiable.

36. Under the circumstances, Defendants' use of force against Plaintiff Maurice Brown, in the presence of and witnessed by his three-year-old son Amir Brown was unnecessary, unreasonable, and unjustifiable.

## COUNT III
### PLAINTIFF AGAINST THE CITY OF CHICAGO FOR *MONELL* LIABILITY

37. Plaintiffs incorporate and reallege paragraphs one (1) through twenty-two (22) hereat as though fully set forth at this place.

38. The misconduct of the Chicago Police Department Sergeants and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of Practice, the Chicago Police Department encourage the very type of misconduct at issue here by failing to adequately train, supervise, control, and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

39. As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instance of similar

misconduct, thereby leading to Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated the rights of citizens.

40. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

41. Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015 Rahm Emmanuel, then-Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

42. On December 8, 2015 Mayer Emmanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

> Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?
>
> Answer: The short answer is, yes.

43. [**officer complaint history, which officers are we naming? There are 39 listed on the warrant**]

44. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

45. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

46. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times, IAD, IPRA, and/or COPA will not consider those allegations if they are deemed unsustained.

47. Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgment that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

48. [**specific examples of payouts for officers involved in this case**]

49. In January 2017, the U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

   a. The City of Chicago's accountability systems for Chicago Police Officers contribute to a pattern or practice of unconstitutional conduct;

   b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

   c. Investigations into police misconduct are neither fair nor complete;

   d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers for deliberately concealing misconduct; and

    e.    The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct.

50.    Plaintiffs allege that these customs, policies, and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, the City of Chicago is liable for the harm done to Plaintiffs as set forth above.

WHEREFORE, the Plaintiffs, by and through their attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them

1.    That individual Defendants and each of them and other unnamed and unknown Defendants be required to pay Plaintiffs' general damages, including emotional distress, in a sum to be ascertained;

2.    That these same Defendants be required to pay Plaintiffs' special damages;

3.    That these same Defendants other than the City of Chicago be required to pay Plaintiffs' attorneys fees pursuant to § 1988 of Title 42 of the United States Code, the Equal Access to Justice Act, or any other applicable provision;

4.    That the individual Defendants and each of them and other unnamed and unknown Defendants other than the City of Chicago and Cook County be required to pay punitive and exemplary damages in a sum to be ascertained;

5.    That the Defendants be required to pay Plaintiffs' costs of the suit herein incurred; and

6.    That Plaintiffs have such other and further relief as this court may deem just and proper.

                              BY:    s/ Edward M. Fox
                                          ED FOX & ASSOCIATES
                                          Attorneys for Plaintiff
                                          300 West Adams
                                          Suite 330
                                          Chicago, Illinois 60606
                                          (312) 345-8877

efox@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: s/Edward M. Fox
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efox-law.com