IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DVISION

| | | |
|---|---|---|
| MAURICE BROWN, for himself and on behalf of his minor child, AMIR BROWN | ) ) ) | |
| | ) | Case No.: 21-CV-1397 |
| Plaintiffs, | ) ) | Honorable John Robert Blakey |
| | ) | |
| v. | ) ) | Magistrate Judge Maria Valdez |
| CHICAGO POLICE DEPARTMENT et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
CITY OF CHICAGO'S MOTION TO DISMISS COUNT III
OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.     INTRODUCTION**

The Defendant has made a Rule 12(b)(6) motion to dismiss Plaintiffs' *Monell* claim that was made in a in an unreasonable seizure and search case. The Plaintiffs, which include a two-year old child, were subject to an abusive search. They had done nothing wrong and were not arrested, yet Maurice Brown was handcuffed and made to stand in cold rain for roughly an hour and a half, and his young son had guns pointed at him. There has been a long-standing custom of the Chicago Police Department to undertake wrongful and abusive searches pursuant to a search warrant.

The Defendant's motion often confuses what Plaintiffs need to prove as opposed to what is needed to be alleged. Examples of this are pointed in this brief below. Also, as shown below, Plaintiff has pled all that is necessary to prove a custom and practice of not properly training and addressing CPD officers who treat small children abusively, and inadequately investigating and disciplining complaints of misconduct such that this facilitate and motivates officers to engage in

1

misconduct because they believe they can do so with impunity. Plaintiffs' allegations are similar to what have been found adequate in many cases. Hence, Plaintiff respectfully submits that Defendant's motion should be denied.

## II. STATEMENT OF FACTS

This is a section 1983 case brought for an unreasonable seizure of Plaintiffs' and an abusive search of Plaintiffs' residence. (Dkt. 28 at ¶¶ 1; 37;42). Neither of the Plaintiffs were the target of the search warrant. (*Id.* at ¶ 8). Yet, they were made to stand outside in very cold weather for a lengthy period of time and had assault rifles pointed at them. (Dkt. 28 ¶¶ 9; 12; 15). Defendants detained Plaintiff Amir Brown a toddler, in near freezing weather, without socks or shoes, covered in poop, rain-soaked, and crying for at least 45 minutes. (Dkt. 28 at ¶¶ 12; 15-19). None of the Plaintiffs were arrested. (*Id.* at ¶ 26). The facts relevant to this motion are set forth below:

Defendant officers' use of excessive force against and in the presence of Plaintiff AmirBrown was directly and proximately caused by one or more of the following specific, long standing, interrelated, failures of official policy, lack of official policy, *de facto* policies, widespread practices and/or customs of the Chicago Police Department: 1) a pattern and practice of using excessive force against children; 2) a systematic failure to investigate and discipline incidents of officer excessive force against children; 3) an absence of official policy and training to avoid unnecessary or excessive use of force against and in the presence of children. (Dkt. 28 at ¶44). The misconduct of the Defendant Officers was facilitated by the Chicago Police Department's deficient policies and procedures relating to excessive force used against and in thepresence of children. This misconduct included failing to make reasonable efforts to determine whether children will be present prior to executing a search warrant, make reasonable efforts to execute search warrants at times when it is less likely children will be present, take steps to de- escalate the situation and/or tactics when

unexpectedly encountering children, take other precautions to avoid traumatizing children, such as avoiding placing parents in handcuffs in the children's presence, and failing to record the entire execution of search warrants with body worn cameras in order to hold officers accountable and deter misconduct during the execution of search warrants. *(Id*. at ¶45).

Defendant Officers' conduct towards and in the presence of Plaintiff Amir Brown was undertaken as a direct consequence of Defendant City of Chicago's long-standing failure to have any affirmative, official policies and/or training explicitly requiring officers to avoid using unnecessary or excessive force against children or against their adult relatives in the children's presence whenever possible. (Dkt. 28 at ¶46). The failures to promulgate proper or adequate policies and procedures caused routine violations of the constitutional rights of children in the City of Chicago, including PlaintiffAmir Brown. *(Id*. at ¶47). As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff Amir Brown.Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens. *(Id*. at ¶48).

The Chicago Police Department has a widespread "code of silence" wherein policeofficers will not report misconduct committed by fellow officers. (Dkt. 28 at ¶49). Municipal policy-makers are aware of, and condone and facilitate by their inaction, a"code of silence" in the Chicago Police Department. For example, on December 8, 2015, Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this"code of silence." *(Id*. at ¶¶ 50-51). Mayor

Lori Lightfoot prior to her 2019 election was Chairperson of the Chicago Police Accountability Taskforce. In 2016, the Chicago Police Accountability Taskforce acknowledged the "code of silence" within the Chicago Police Department. *(Id*. at ¶52). The same Code of Silence and ineffective system of police oversight were in placewhen Plaintiff Amir Brown's constitutional rights were violated in March 2019. *(Id*. at ¶53).

Generally, as a matter of widespread practice so prevalent as to comprise municipalpolicy, officers of the Chicago Police Department abuse children in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases. (Dkt. 28 at ¶54). The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types ofinjuries alleged here. *(Id*. at ¶55). In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings: a)CPD has a pattern and practice of using less-than-lethal, excessive force againstchildren for non-criminal conduct; b) The City of Chicago's accountability systems for Chicago Police Officers contribute a pattern or practice of unconstitutional conduct; c) The City of Chicago's Policies and Practices impede the investigation of PoliceOfficer misconduct; d) Investigations into police misconduct are neither fair nor complete; e) The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct; and f) The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct. *(Id*. at ¶56). In addition, the 2017 DOJ report concluded that 83% of Chicago Police Department'sdata on use of force incidents with youth involved black children like Plaintiff Amir Brown. *(Id*. at ¶57).

4

Also, in the April 2016 report by the Police Accountability Task Force, they reported that the 2015 Chicago Community Survey conducted by researchers from the University of Illinois at Chicago found "large racial disparities in the use of force reported by respondents…[Blacks] were twice as likely as whites to be threatened by a weapon." (Dkt. 28 at ¶58). The findings in the DOJ Report about the CPD's policy and practice of using excessive force are reinforced by complaint data and citizen beliefs, as published in the Task Force Report. The report noted that "Children in some areas of the City are not only being raised in high-crime environments, but they are also being mistreated by those who have sworn to protect and serve them. Throughout our community engagement efforts, including during our youth panels, we heard story after story of officers treating youth with disrespect, humiliating them or worse." *(Id*. at ¶59).

As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained. (Dkt. 28 at ¶60). Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers. *(Id*. at ¶60). In 2018, the City of Chicago paid more than $113 million to settle Chicago Police misconduct cases putting the City of Chicago on notice regarding failed policies, practices and customs. *(Id*. at ¶61).

Illustrative but non-exhaustive, highly publicized accounts of the Chicago Police Department using excessive force against children and/or in the presence of children have further put the City of Chicago on notice regarding failed policies, practices and customs. This includes *Simmons et al v. The City of Chicago et al*., 14-CV-9042, where Chicago Police Officers used excessive

force against a young child while executing a search warrant including pointing a gun at a three-year-old, which resulted in a 2.5-million-dollar settlement. Another example is, *Holly et al v. Kinney et al.*, 13-CV-1616, where Chicago Police Officers while executing a search warrant held six children between the ages of 11 months to 13-years-old at gunpoint for half an hour, which resulted in $95,000 settlement. Further examples include the pending case, *Archie et al v. City of Chicago*, 19-CV-4838, where it is alleged that Chicago Police Officers held young children at gunpoint during the execution of a search warrant and *Anderson et al v. City of Chicago et al*, 16-CV-0726, a case that the City of Chicago settled in 2018 and where Chicago Police Officers pointed a gun at a minor's head during the execution of a search warrant. (Dkt. 28 at ¶62). The examples above demonstrate that the Chicago Police Department's pattern and practice of using excessive force against children, particularly African-American children, like Plaintiff Amir Brown, is longstanding and widespread. *(Id.* at ¶63).

All of the above widespread practices and customs, individually and/or collectively were allowed to flourish because the leaders, supervisors, and policymakers of the Chicago of Chicago, including but not limited to former Mayor Rahm Emanuel and Police Superintendent Eddie Johnson, directly encouraged, allowed, acquiesced in, and/or turned a blind eye to the very type of misconduct discussed above, by failing to adequately train, supervise, and control Chicago Police Officers, by failing to promulgate policies, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses, such as those affecting Plaintiff Amir Brown. (Dkt. 28 at ¶64). In addition, and/or alternatively, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in that the constitutional violations committed against Plaintiff Amir Brown were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago,

or were actually committed by persons with such final policymaking authority. *(Id*. at ¶65).

Plaintiffs allege that these customs, policies and practices, described above, were the moving force behind the Defendant Officer's use of excessive force against Plaintiff Amir Brown and thus the moving force behind the violations of Plaintiff Amir Brown's rights. Based upon the principles set forth in <u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to Plaintiff as set forth above. (Dkt. 28 at ¶66).

### III.  STANDARD OF REVIEW

In the first instance, contrary to that suggested by Defendant, *Monell* claims are not subject to any heightened pleading standard. The Federal Rules of Civil Procedure only require that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and it must plausibly suggest, above a "speculative level," that the plaintiff has a right to relief. Id. A claim is plausible when the alleged facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Contrary to that suggested by Defendant, *Monell* claims are not subjected to a heightened pleading standard. *Johnson v. Cook County Sheriff's Office*, 16 C 07523, 2018 WL 2193235, at *2 (N.D. Ill. May 14, 2018) *citing Estate of Sims ex rel. Sims v. County of*

*Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

## IV. ARGUMENT

### A. PLAINTIFF'S HAVE PROPERLY PLED A "WIDESPREAD PRACTICE"

Defendant appears to contend that Plaintiffs have not adequately pled, in the context of search warrants, that there was a widespread practice of excessive force against children, a failure to investigate and discipline the use of force, and an absence of policy of training to deter force against children. Dkt. 31, at 5. In order to support its contention, Defendant cited a case arguing that to determine whether Plaintiff has pled a widespread practice "a court examines 'the instances of misconduct alleged the circumstances surrounding the alleged constitutional inquiry, and additional facts probative of a widespread practice or custom'" *Id., citing to Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). That citation is curious though because that case supports the denial of Defendant's motion based upon what Plaintiff has pled here. The *Williams* case stated as follows:

> Not only that, a plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ) (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post–*White* courts analyzing *Monell* claims...have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff.") (collecting cases). In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom. … Looking at all of the circumstances here, Williams has alleged that no less than three GPRs were destroyed or lost and that multiple reports were falsified by the Officers (or numerous reports selectively omitted exculpatory information gained in witness interviews). Based on these allegations, Williams has sufficiently pled that the City has a policy or custom that violates the Constitution. *See, e.g.*, *Hill*, 2018 WL 278720, at *5 (finding nearly identical

allegations sufficient to state a *Monell* claim, particularly when combined with the other instances of wrongdoing alleged in the complaint).

*Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018).

In the instant case, Plaintiffs have pled more than what was found adequate in *Williams*. As shown in the statement of facts, Plaintiff has expressly referred to 4 other cases. (Dkt. 28 at ¶ 56). Further, the DOJ report that was referenced recites that children, like Amir Brown, are being routinely mistreated by police, and that the City of Chicago failed "to promulgate proper or adequate policies and procedures caused routine violations of the constitutional rights of children in the City of Chicago…" (Dkt. 28 at ¶¶ 57; 59). "Allegations with respect to the pervasive nature of the alleged constitutional violations [a]re sufficient to establish that the practice was widespread enough to impute constructive knowledge to the City." *Hall v. City of Chicago*, 989 F. Supp. 2d 699, 708 (N.D. Ill. 2013); *See also Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) *citing Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir.2005)("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.") As seen in the complaint, Plaintiff also referenced many other relevant facts including customary failure to adequately investigate and discipline police misconduct.

There are no "bright-line rules defining a widespread custom or practice" a complaint must allege that "there is a policy at issue rather than a random event." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). To plead a widespread practice or custom, a Plaintiff must allege a "general pattern of repeated behavior." *Bradford v. City of Chicago*, 16 C 1663, 2017 WL 2080391, at *4 (N.D. Ill. May 15, 2017)(internal quotations omitted). Therefore, Defendant's argument that reciting 4 other cases, plus Plaintiff's own experience is not enough to show a custom is contradicted by the *Williams* case *supra,* as well as many other cases that

have found adequate similar *Monell* allegations, although much less was pled than in this instance. *See, e.g., BENITO FLORES DELGADO v. City of Chicago, et al.,* 2021 WL 2784304 at *2; *Padilla v. City of Chicago*, 2011 WL 3651273, at *3; *Sherwood v. City of Chicago*, 2020 WL 777258, at *2–3 (N.D. Ill. Feb. 18, 2020); *Baskins v. Gilmore,* 2018 WL 4699847, at *3 (N.D. Ill. Sept. 30, 2018). Hence, Plaintiffs have clearly and adequately pled a "widespread practice" through a "general patter of repeated behavior" and Defendant's motion should be denied.

### B. PLAINTIFFS' PLEADING DEMONSTRATES A "DELIBERATE INDIFFERENCE"

In the first instance, Defendant's argument that Plaintiffs "fails to state 'deliberate indifference' element'" is not an argument relevant to a Rule 12(b)(6) motion. Their argument solely focuses on the contention that, factually, Plaintiffs cannot *prove* deliberate indifference because of supposed efforts the City has made to remedy it historically routine constitutional violations. Dkt. 31 at 9-13. For example, the City argues that "the public record shows that the City has acted to bolster its disciplinary system through the Municipal Code…*Id.,* at 12. That sort of argument has no place in a Rule 12(b)(6) motion.

In fact, however, although not properly argued and thus waived, in an abundance of caution, Plaintiff has properly pled facts showing deliberate indifference. A plaintiff can plead deliberate indifference by alleging facts that would establish "either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029–30 (7th Cir.2006) (citing *Harris,* 489 U.S. at 390 & n. 10, 109 S.Ct. 1197; *Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir.1997)). Additionally, a municipality would be shown to be deliberately indifferent to the "constitutional rights of its citizens by failing to train

its employees "with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997).

The foregoing requirements have been pled. Plaintiff has expressly pled many facts showing a failure to respond to repeated complaints and a failure to train employees in the relevant situations. (*E.g.,* Dkt. 28 at ¶¶ 17-20; 22). The Defendant's desire to have the Court take judicial notice of items in the public record and the DOJ report actually demonstrates the City's failures.

With regard to the DOJ report, the United States Department of Justice investigation of the CPD concluded that the CPD has a pattern and practice of using excessive force against citizens, including children. https://www.justice.gov/opa/file/925846/download at 34. The DOJ also found that CPD's uses of force, whether reasonable or unreasonable, disproportionately involve Chicago's citizens and youth of color (as are Plaintiffs in the instant case). *Id.*

Further, the 2016 report of the mayoral-appointed Chicago Police Accountability Task Force ("PATF") contained similar or parallel conclusions. Among other things, it concluded that most CPD officers are not trained or equipped to interact with youth. https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf at 55. PATF recommended a number of specific reforms, including training, in order to improve police interactions with youth so as not to traumatize them. *Id.* However, and contrary to Defendant's argument that the City has acted to remedy its issues (Dkt. 31, at 11-13), the CPD and the City did not subsequently implement any changes in CPD policy, procedure, or training in order to remedy or otherwise address officers' practice of using excessive force against or in the presence of children. Further, none of the reforms and new training that CPD did undertake in the wake of the DOJ and PATF reports addressed Chicago police officers' use of excessive force against children.

As an example of this, following the release of the DOJ report in 2017, the CPD revised its use of force policy, GO3-02, *but did not include any changes that expressly require officers to refrain from pointing guns at or using force against or in the presence children* – which is precisely what is at issue in the instant case. Similarly, through 2019, CPD did not revise its search warrant policy, SO9-14, or its search warrant training to include any requirements or instruction that officers refrain from pointing guns at or using force against or in the presence children, when possible, or use a trauma-informed approach to the use of force in situations where children are present.

Moreover, in the federal consent decree that the Defendant would like the Court to take judicial notice (and with which Plaintiff agrees is appropriate), the City did not actually commit to any reforms to remedy the problem. *See State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. Hence, not only did Plaintiffs properly plead facts that show deliberate indifference, but also, based upon the City's actions or inactions, some of which have been documented herein, Plaintiffs are likely to prevail on their *Monell* claims.

C. **PLAINTIFF HAS PROPERLY PLED CAUSATION**

Defendant's claim that Plaintiff's allegations regarding causation are inadequate because they are conclusory. This is also wrong. Dkt. 31 at 13-14. The cases that Defendant cites for this proposition do not support its argument. The case of *Bryan County v Brown,* 520 U.S. 397, 117 S.Ct. 1382 (1997), that Defendant relies upon, did not address cases of widespread custom.

In *Jordan v. City of Chicago,* 20-CV-4012, 2021 WL 1962385, at *5 (N.D. Ill. May 17, 2021) cited by Defendant, the Plaintiff pled a single sentence stating that the code of silence was the "moving force" of Plaintiff's claims. This was the reason that the motion to dismiss was

granted. In the Instant case, plaintiff has pled 4 paragraphs of facts showing that the described customary acts of misconduct were the cause of Plaintiff's injury. (Dkt. 28 at ¶¶ 29; 64-67).

The Defendant also cites to *Anderson v. Allen* 2020 WL 5891406 (2020), which in turn cites to *Bryan County,* for the alleged proposition that a "moving force must be pleaded with enough facts to allow the court to infer 'a direct causal link between the municipal action and the deprivation of federal rights.'" Dkt. 17 at 14. However, the *Anderson* case, *supra* at is not correct. For its statement, the *Anderson* case cited to *Bryan* from the *syllabus portion* of the *Bryan* opinion. The syllabus, however, is not part of the official opinion and not written by the Justices.[1] Importantly, from the body of the *Bryan* opinion, the Court held that: "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Bryan County, supra, 520 U.S. 397* at 405, 117 S. Ct. 1382 at 1389. Based upon this, it is clear that Plaintiffs need only to plead, as was done here, that custom and practice "was the moving force" of the injury. But, here, Plaintiffs have pled much more, including that "policymakers of the Chicago of Chicago, including but not limited to former Mayor Rahm Emanuel and Police Superintendent Eddie Johnson, directly encouraged, allowed, acquiesced in, and/or turned a blind eye to the verytype of misconduct discussed above, by failing to adequately train, supervise, and control Chicago," and "that the Chicago Police Department's pattern and practice of using excessive force against children, particularly African-American children, like Plaintiff Amir Brown, is longstanding and widespread." Plaintiff also pled that these customs and

---

[1] According to the Supreme Court website "[t]he bench opinion pamphlet for each case consists of the majority or plurality opinion, any concurring or dissenting opinions written by the Justices, and a prefatory *syllabus* prepared by the Reporter's Office that summarizes the decision. (Emphasis added) This is found at: https://www.supremecourt.gov/opinions/info_opinions.aspx

policies "were the moving force behind the Defendant Officer's use of excessive force against Plaintiff Amir Brown and thus the moving force behind the violations of Plaintiff Amir Brown's rights." (Dkt. 28 at ¶¶ 64-67). Thus, Plaintiffs have properly pled causation, and on this ground also, Defendant's motion should be denied.

## IV. CONCLUSION

For all the foregoing reasons Plaintiffs respectfully submit that Defendant City of Chicago's Motion to Dismiss Count III of Plaintiffs' Second Amended Complaint should be denied.

Dated: August 5, 2021　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　s/ Jaclyn N. Diaz
　　　　　　　　　　　　　　　　　　　　　　ED FOX & ASSOCIATES
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　　　　300 West Adams St., Suite 330
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　　　(312) 345-8877
　　　　　　　　　　　　　　　　　　　　　　jdiaz@efoxlaw.com